# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAMONT REED,<br>      Petitioner,<br><br>      v.<br><br>UNITED STATES OF AMERICA,<br>      Respondent. | No. 3:16-cv-01356 (SRU) |

## RULING ON PETITION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Lamont Reed, a prisoner incarcerated at the Federal Correctional Institution, Beckley, has moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Mot. Vacate, Set Aside, or Correct Sentence, Doc. No. 1 ("Mot. Vacate"). Reed argues that Amendment 794 to the United States Sentencing Guidelines—effective after his sentence was imposed—applies retroactively and entitles him to a reduction in his advisory sentencing range. The government responds that Amendment 794 does not apply retroactively, and that even if it did, Reed would not be entitled to a reduction in his sentence. I conclude that Amendment 794—a revision to the purely advisory Sentencing Guidelines—does not provide a basis for habeas relief under section 2255. Therefore, I dismiss Reed's habeas petition for lack of jurisdiction.

### I.  Standard of Review

Section 2255 provides a prisoner in federal custody an opportunity to challenge the legality of his or her sentence. To obtain relief under section 2255, the petitioner must show that his or her prior sentence was invalid because the sentence: (1) was "imposed in violation of the Constitution or laws of the United States"; (2) was imposed "without jurisdiction" by the sentencing court; (3) was "in excess of the maximum authorized by law"; or (4) is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The standard is a high one; even constitutional

errors will not be redressed through a section 2255 petition unless they have had a "substantial and injurious effect" that results in "actual prejudice" to the petitioner. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (internal citations omitted); *Underwood v. United States*, 166 F.3d 84, 87 (2d Cir. 1999) (applying *Brecht*'s harmless error standard to section 2255 petition).

A section 2255 petition "may not be employed to relitigate questions which were raised and considered on direct appeal." *Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir. 1992); *see also Reese v. United States*, 329 F. App'x 324, 326 (2d Cir. 2009) (quoting *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001)). That limitation prohibits relitigation of issues that were expressly or impliedly decided on direct appeal. *United States v. Ben Zvi,* 242 F.3d 89, 95 (2d Cir. 2001). A court may only reconsider an earlier decision if it is "confronted with 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *United States v. Becker*, 502 F.3d 122, 127 (2d Cir. 2007) (quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)).

Furthermore, a section 2255 petition is "not a substitute for direct appeal." *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012) (citing *Zhang v. United States,* 506 F.3d 162, 166 (2d Cir. 2007)). A court will not review claims that the petitioner failed to properly raise on direct review "unless the petitioner shows (1) good cause to excuse the default and ensuing prejudice, or (2) actual innocence . . . ." *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). In the context of a habeas petition, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623.

The petitioner bears the burden of proving, by a preponderance of the evidence, that he is entitled to relief. *See Napoli v. United States*, 45 F.3d 680, 683 (2d Cir. 1995). A district court is not required to accept the petitioner's factual assertions as credible "where the assertions are

contradicted by the record in the underlying proceeding." *Puglisi v. United States*, 586 F.3d 209, 214 (2009). Section 2255 also requires that the district court hold a hearing on the petitioner's motion unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001). But "although a hearing may be warranted, that conclusion does not imply that a movant must always be allowed to appear in a district court for a full hearing if the record does not conclusively and expressly belie his claim." *Id.* (citing *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). "If it plainly appears from the [petition], any attached exhibits, and the record of prior proceedings that the [petitioner] is not entitled to relief, the judge must dismiss the [petition]." *Puglisi*, 586 F.3d at 213.

## II. Background

Reed's current petition was preceded by a criminal case, *United States v. Reed*, 3:12-cr-00074 (WWE) (D. Conn.), and an appeal, *United States v. Reed*, 14-3812 (2d Cir.). Throughout this section, I use "Cr. Doc." to refer to docket entries in Reed's criminal case, and "App. Doc." to refer to docket entries in his appeal.

### A. Indictment and Plea

On April 9, 2012, Lamont Reed was indicted (along with seventeen others) for conspiracy to possess with intent to distribute 280 grams or more of a mixture or substance containing a detectable amount of cocaine base ("crack cocaine"), in violation of 21 U.S.C. §§ 841(b)(1)(A)(iii) & 846. Indictment, Cr. Doc. No. 12. The charges were brought after an FBI-led investigation into drug trafficking in New Haven by a street gang known as the Grape Street Crips. Final Presentence Report, Cr. Doc. No. 877, at 6 ("PSR").

3

On November 7, 2013, Reed pled guilty before United States Magistrate Judge Holly B. Fitzsimmons, pursuant to a written plea agreement, to the lesser included offense of conspiracy to possess with intent to distribute 28 grams or more of a mixture or substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. §§ 841(b)(1)(B)(iii) & 846. *See* Plea Agreement, Cr. Doc. No. 673. Judge Fitzsimmons issued findings and recommended that Reed's guilty plea be accepted by the court. Findings & Recommendation, Cr. Doc. No. 674.

B. Sentencing

A presentence report was ordered and prepared by the United States Probation Office, which calculated Reed's advisory sentencing guidelines using the 2013 Guidelines manual. Because Reed's conduct "conservatively include[d] at least 203 grams of cocaine base," the Probation Office calculated a base offense level of 30 pursuant to U.S.S.G. § 2D1.1(c)(5) (offense involving distribution of at least 196 grams, but less than 280 grams, of cocaine base). PSR, Cr. Doc. No. 877, at 11. The Probation Office subtracted three levels for acceptance of responsibility, resulting in a total offense level of 27. *Id.* at 12. Reed's criminal convictions were calculated to yield a criminal history score of 17, which placed Reed in criminal history category VI. *Id.* at 17. Reed's advisory guideline range therefore was 130 to 162 months. *Id.* at 23. The Probation Office noted, however, that the Sentencing Commission had issued a proposal for public comment—subsequently adopted as Amendment 782—that would reduce Reed's total offense level to 25, which would result in an advisory guideline range of 110 to 137 months. *Id.* at 25. In its presentencing memorandum, the government did not object to that reduction of Reed's total offense level, *see* Gov't's Sentencing Mem., Cr. Doc. No. 887, and the Court used a total offense level of 25 at sentencing. *See* Sentencing Hr'g Tr., Cr. Doc. No. 1014, at 35.

On September 4, 2014, United States District Judge Warren W. Eginton accepted Reed's proposed guilty plea. *Id.* at. Judge Eginton then heard argument from counsel and a statement by Reed. Reed's counsel extensively addressed "Reed's involvement" in the criminal conspiracy, and contended that Reed "was only on the phone discussing" crack cocaine and "looking for connections." Sentencing Hr'g Tr., Cr. Doc. No. 1014, at 7. Reed, his counsel emphasized, "wasn't pounding the streets, [and] wasn't distributing anything." *Id.* He "was never . . . alleged as a member of the Grape Street Grips," and "was never . . . alleged [to have participated] in any hand-to-hand transactions." *Id.* at 8. Reed's attorney also noted that other defendants in Reed's case who were "gang member[s], . . . drug dealer[s], . . . [and] shooter[s] for the gang" had received sentences ranging between 18 and 64 months. *See id.* at 9–10. Judge Eginton acknowledged that of the "13 [defendants] sentenced" in Reed's case, "none of them were close to [Reed's guideline minimum of] 110 months," but he explained that the apparent disparity was due to Reed's "past history" and extensive criminal record. *Id.* at 10, 13; *see also id.* at 18, 22–23 (Reed's criminal record was "why there seem[ed] to be a disparity . . . between what [Judge Eginton] did with 13 others and what [he] should be doing here.").

The government disputed Reed's attorney's characterization of Reed as a minor participant. The Assistant United States Attorney argued that Reed "was a substantial player in [the] drug operation," and that Reed and the leader of the Grape Street Crips "pooled their money together several times a week to purchase wholesale quantities of cocaine." *Id.* at 15. "[T]he suggestion that [] Reed . . . didn't play a significant role . . . [was] actually inaccurate," asserted the government. Judge Eginton "agree[d] with the government" that Reed's role in the offense was not insignificant, and added that he thought "[P]robation agree[d] with the government," as well. *Id.* at 16.

5

Reed then made a statement to Judge Eginton, in which he argued that he was "not responsible for [] 203 grams" of crack cocaine, "was [not] a substantial player," and was "no big-time drug dealer." *Id.* at 27–28. Reed's insistence that he was "not responsible for 203 grams" led his attorney to follow up that Reed did not "want[] to withdraw his plea." *Id.* at 30. Reed clarified that he was not seeking to withdraw his plea and was willing to be sentenced "based upon the involvement of 203 grams of cocaine base." *See id.* at 33.

Judge Eginton proceeded to calculate Reed's advisory guidelines, address the considerations of 18 U.S.C. § 3553(a), and impose a sentence. He began with the base offense level of 30 for 203 grams of crack cocaine. *Id.* at 35; *see* U.S.S.G. § 2D1.1(c)(5). He reduced three levels for acceptance of responsibility and two levels to account for the proposed amendment to the Sentencing Guidelines, but did not reduce any levels for role in the offense. Sentencing Hr'g Tr., Cr. Doc. No. 1014, at 35. The result, Judge Eginton calculated, was a total offense level of 25, which, in conjunction with criminal history category VI, produced an advisory guideline range of 110 to 137 months. *Id.*

For the reasons set forth by Reed's attorney—evidently, Reed's comparatively minor role in the conspiracy, lack of gang membership, efforts to pursue education since his arrest, and difficult childhood, *see id.* at 7–13—Judge Eginton elected to sentence Reed to the bottom of the Guidelines range, 110 months, followed by a mandatory term of four years of supervised release. *Id.* at 35. Judgment entered on September 5, 2014. Judgment, Cr. Doc. No. 975.

C. <u>Direct Appeal</u>

Reed appealed his sentence on October 3, 2014. Notice of Cr. App., App. Doc. No. 1. Reed was represented by counsel on appeal, and also filed several documents pro se. Reed's attorney's brief again argued that "Reed's involvement was starkly minimal" and—"[w]hen

6

compared to level of involvement of his co-defendants"—"extremely minimal," and contended that "the district court failed to consider the significance of [] Reed's minimal role in the offense when imposing his sentence." Appellant's Br., App. Doc. No. 25, at 13, 23, 26. "Reed's limited participation in the offense," counsel asserted, "was a mitigating factor that should have been considered by the district court when imposing his sentence." *Id.* at 26. Reed's attorney also specifically invoked the Sentencing Guidelines departure for "limited participation in an offense." *See id.* (citing U.S.S.G. § 3B1.2). The government argued in response that Reed did not claim that "he was entitled to a role reduction under U.S.S.G. § 3B1.2" during the district court proceedings, and that "[i]n any event, the court did not ignore Reed's . . . 'minor role' argument." Gov't's Br., App. Doc. No. 38, at 38–40. Although Judge Eginton "may not have explicitly addressed the minor role argument in [his] discussion of the § 3553(a) factors," he was not required to do so by Second Circuit precedent, and Judge Eginton reasonably concluded that "Reed's claim that he played a 'minor role' [was] not supported by the record." *Id.* at 41–42.

The Second Circuit affirmed Reed's sentence by summary order on October 16, 2015. *United States v. Reed*, 629 F. App'x 19 (2d Cir. 2015). With regard to Reed's contention that "the District Court failed to consider . . . Reed's limited role in the enterprise," the Second Circuit "disagree[d]." *Id.* at 21. "Judge Eginton clearly stated his agreement with the government's contention that Reed's role was not minor, but nonetheless set the sentence at the bottom of the Guidelines range based on defense counsel's arguments." *Id.* The Court also rejected Reed's argument that his sentence was substantively unreasonable due to "his limited participation in the offense." *Id.* at 22. "The District Court," the Second Circuit held, "was well within its discretion to conclude . . . that Reed substantially participated in a serious offense and that the bottom of the Guidelines range was sufficient to achieve the goals of § 3553(a)." *Id.* at

7

22–23. Therefore, the Court affirmed Reed's sentence in all respects. The mandate issued on November 16, 2015. App. Doc. No. 101.

   D. Section 2255 Petition

Reed filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on August 10, 2016.[1] Doc. No. 1. I issued an order on January 4, 2017 requiring the government to show cause why the relief prayed for in the petition should not be granted. Doc. No. 3. The government responded to the petition on February 6, 2017. Doc. No. 4. Because Reed's petition relied on a pure issue of law, I exercised my discretion to decide the motion without an evidentiary hearing. *See Morales v. United States*, 635 F.3d 39, 45 (2d Cir. 2011).

**III. Discussion**

As the sole basis for granting his habeas petition, Reed asserts that Judge Eginton should have reduced Reed's Guidelines offense level by two points to reflect his minor role in the offense. Mot. Vacate Sentence, Doc. No. 1, at 4. The relevant provision of the Sentencing Guidelines, U.S.S.G. § 3B1.2 (Mitigating Role), provides as follows:

> Based on the defendant's role in the offense, decrease the offense level as follows:
>
> (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

---

[1] As an initial matter, Reed's habeas petition was timely. "A motion . . . under 28 U.S.C. § 2255 is subject to a one-year time limitation that generally runs from 'the date on which the judgment of conviction becomes final,'" and "a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction." *Clay v. United States*, 537 U.S. 522, 524–25 (2003). Supreme Court Rule 13.1 provides that "a petition for a writ of certiorari to review a judgment . . . is timely when it is filed with the Clerk of th[e] Court within 90 days after entry of the judgment." Sup. Ct. R. 13.1. Because Reed did not file a petition for certiorari, he was required to file his section 2255 motion within one year of 90 days after judgment, i.e., before January 14, 2017. He did so.

(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

In cases falling between (a) and (b), decrease by 3 levels.

The United States Sentencing Commission amended the commentary to (but not the text of) section 3B1.2 with an effective date of November 1, 2015. *See* U.S.S.G., Supp. App'x C, at 116 ("Amd. 794"). Amendment 794 was promulgated after the Commission "conducted a review of cases . . . [and] found that mitigating role [was] applied inconsistently and more sparingly than the Commission intended." Amd. 794 at 117. The amendment clarified that "when determining mitigating role, the defendant is to be compared with the other participants in the criminal activity," and added a "non-exhaustive list of factors for the court to consider in determining whether to apply a mitigating role adjustment and, if so, the amount of the adjustment." *Id.* at 117–18 (internal quotation marks omitted). Those factors are:

(i) the degree to which the defendant understood the scope and structure of the criminal activity;

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.

*Id.* at 116. Reed identifies a case in which the Ninth Circuit—later joined by other circuits—held that Amendment 794 is a "clarifying amendment" that should be applied retroactively. Mot. Vacate Sentence, Doc. No. 1, at 4 (citing *United States v. Quintero-Levya*, 823 F.3d 519 (9th Cir.

2016)). He argues that Amendment 794 makes clear that he is entitled to a two-level reduction and that he should be "re-sentence[d] . . . accordingly." *Id.* at 5.

The government responds that Amendment 794 is only retroactively applicable on direct appeal, not (as here) on collateral review. Gov't's Resp., Doc. No. 4, at 1. Even if the amendment were applicable on collateral review, moreover, the government contends that Reed would not be entitled to the two-level reduction. *Id.*

I agree that Reed's petition must be dismissed, but on grounds other than those raised by the government. Reed does not present a viable claim that his "sentence was imposed in violation of the Constitution or laws of the United States, . . . or that the sentence was in excess of the maximum authorized by law." *Cf.* 28 U.S.C. § 2255. The Sentencing Guidelines are advisory, and even a sentence above the Guidelines range (which Reed's was not) would neither be "imposed in violation of the Constitution or laws of the United States" nor "exce[ed] . . . the maximum authorized by law." *Id.* Liberally construed as a motion for resentencing under 18 U.S.C. § 3582(c)(2), Reed's petition also fails, because Amendment 794 is not listed as a retroactive amendment under U.S.S.G. § 1B1.10. Therefore, Reed cannot establish relief under either section 2255 or section 3582, and I dismiss his petition for writ of habeas corpus. *See Puglisi*, 586 F.3d at 213.

A. <u>Jurisdiction Under 28 U.S.C. § 2255</u>

"[C]ollateral attack on a final judgment in a criminal case is generally available under [section] 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in complete miscarriage of justice.'" *Graziano v. United States*, 83 F.3d 587, 589–90 (2d Cir. 1996) (per curiam) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)). Because "[d]irect review

is the principal avenue for challenging a conviction," section 2255 proceedings are "secondary," "limited," and subject to "procedural restrictions." *Brecht*, 507 U.S. at 633; *See Reed v. Farley*, 512 U.S. 339, 355, 358 (1994) (Scalia, J., concurring in part and concurring in the judgment). "[N]ot 'every asserted error of law can be raised on a § 2255 motion.'" *Napoli v. United States*, 32 F.3d 31, 35 (2d Cir. 1994) (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)), *amended on reh'g on other grounds*, 45 F.3d 680 (2d Cir. 1995). "The grounds provided [for relief] in section 2255 . . . are narrowly limited, and it has 'long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment.'" *Id.* (quoting *United States v. Addonizio*, 442 U.S. 178, 185 (1979)).

"[U]nless the claim alleges a lack of jurisdiction or constitutional error"—neither of which Reed raises here—"an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Addonizio*, 442 U.S. at 185 (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)); *Graziano*, 83 F.3d at 590 (applying "fundamental defect" standard to "claims regarding a sentencing court's error in failing to properly apply the Sentencing Guidelines"). Reed bears the burden of showing that Judge Eginton's failure to apply Amendment 794 constituted a "fundamental defect." *See Napoli*, 45 F.3d at 683. He cannot do so.

First, Judge Eginton did not "misappl[y] . . . the Sentencing Guidelines" because the Guidelines calculation was correct when Reed's sentence was imposed. *See Graziano*, 83 F.3d at 590. At the time Reed was sentenced, Amendment 794 had not come into effect, and "a court *must* sentence under the guideline provision in effect on the date of sentencing." *Rodriguez-*

*Alonso v. United States*, 807 F. Supp. 21, 22 (E.D.N.Y. 1992). Thus, Reed cannot "claim that th[e] court erred in imposing the sentence."[2] *See id.*

Second, even had Judge Eginton miscalculated Reed's Guidelines range, courts agree that "[b]arring extraordinary circumstances, . . . an error in the application of the Sentencing Guidelines cannot be raised in a [section] 2255 proceeding." *United States v. Foote*, 784 F.3d 931, 940 (4th Cir. 2015). The Sentencing Guidelines are "advisory" and "do not constrain [courts'] discretion." *Beckles v. United States*, __ U.S. __, 137 S. Ct. 886, 894 (2017). As a result, misapplication of the Sentencing Guidelines generally "do[es] not amount to a 'complete miscarriage of justice.'" *See Graziano*, 83 F.3d at 590; *see, e.g.*, *United States v. Mikalajunas*, 186 F.3d 490, 496 (4th Cir. 1999) "[A] misapplication of the [G]uidelines typically does not constitute a miscarriage of justice."); *Burke v. United States*, 152 F.3d 1329, 1332 (11th Cir. 1998) ("[A] claim that the sentence imposed is contrary to a post-sentencing clarifying amendment is a non-constitutional issue that does not provide a basis for collateral relief in the absence of a complete miscarriage of justice."); *Scott v. United States*, 997 F.2d 340, 342 (7th Cir. 1993) ("deviation from the [advisory] Guidelines" does not cause a "miscarriage[] of justice"). Even were Reed to be resentenced in light of Amendment 794, "the district court could impose the same sentence again." *Spencer v. United States*, 773 F.3d 1132, 1140 (11th Cir. 2014) (en banc). And because "the system of purely discretionary sentencing that predated the Guidelines was constitutionally permissible," *Beckles*, 137 S. Ct. at 894, "errors in the

---

[2] When the range provided by the current Sentencing Guidelines is *higher* than the range in effect when the offense was committed, an ex post facto violation may occur. *See United States v. Peugh*, __ U.S. __, 133 S. Ct. 2072, 2084 (2013). That scenario obviously differs from Reed's case, when the range was *lowered* after Reed committed his crime and was sentenced. An ex post facto violation may occur when a defendant is sentenced under Guidelines providing a higher range than was in effect when the crime was committed.

12

administration of a system that curtails discretion cannot be 'inconsistent with the rudiments of fair procedure.'" *Scott*, 997 F.2d at 342. Therefore, "a fundamental defect or complete miscarriage of justice" cannot occur "in a situation in which [the defendant] was . . . sentenced under an *advisory* Guidelines scheme."[3] *See Foote*, 784 F.3d at 941.

After considering the decisions by the Second Circuit and other Courts of Appeals, I agree that "a defendant seeking to apply a post-sentencing clarifying amendment on collateral review must . . . demonstrate that the court's failure to consider his argument will result in a miscarriage of justice." *Cook v. United States*, 2006 WL 3333068, at *9 (S.D.N.Y. Nov. 15, 2016); *see Sanchez v. United States*, 1993 WL 267310, at *2 (S.D.N.Y. July 13, 1993) ("[I]n order to justify relief under section 2255, [the defendant] must demonstrate that the Court's failure to sentence him as a minor participant was a fundamental defect that resulted in a complete miscarriage of justice."). Here, Reed has not shown "an error . . . sufficiently fundamental to come within th[o]se narrow limits." *See Addonizio*, 442 U.S. at 184–85.

Reed's sentencing proceedings simply "w[ere] not infected with any error of fact or law of the 'fundamental' character that renders the entire proceeding[s] irregular and invalid." *Id.* at 186. Judge Eginton did not err by declining to reduce Reed's Guidelines offense level by two points, because Amendment 794 was not yet in effect. Moreover, even had Judge Eginton miscalculated Reed's offense level, the resulting Guidelines range was purely advisory. Because

---

[3] Courts have suggested that a Guidelines error might result in a "complete miscarriage of justice" if the sentence "exceeded the statutory maximum sentence Congress ha[d] enacted." *Spencer v. United States*, 773 F.3d 1132, 1143 (11th Cir. 2014) (en banc); *see United States v. Foote*, 784 F.3d 931, 943 (4th Cir. 2015) (When the "[defendant]'s sentence did not exceed the statutory maximum, his erroneous [Guidelines] classification did not rise to the level of a 'fundamental' defect."). Of course, in such a situation, section 2255 relief would be available anyway, because the sentence would be "in excess of the maximum authorized by law." *See* 28 U.S.C. § 2255(a).

13

Judge Eginton "sentenced [Reed] 'within the statutory limits,'" any error in the process by which he calculated the Guidelines—even if it "affected the ultimate sentence imposed"—"did not affect the *lawfulness* of the sentence itself." *Foote*, 784 F.3d at 943 (emphasis added) (brackets omitted) (quoting *Addonizio*, 442 U.S. at 187). Bearing in mind "society's strong interest in the finality of criminal convictions," I cannot conclude that Judge Eginton's "failure to sentence [Reed] as a minor participant was a fundamental defect that resulted in a complete miscarriage of justice." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010); *Sanchez*, 1993 WL 267310, at *2. Therefore, Reed fails to establish his entitlement to relief under section 2255, and I dismiss his petition for a writ of habeas corpus. *See Puglisi*, 586 F.3d at 213.

B. Jurisdiction Under 18 U.S.C. § 3582(c)

Due to the obligation to construe pro se pleadings liberally, "[w]here a pro se prisoner improperly files a [section] 2255 petition seeking sentencing reduction pursuant to a Guidelines amendment, a court should construe the petition as a motion for resentencing under 18 U.S.C. § 3582(c)(2)." *United States v. Mercado*, 2017 WL 830967, at *1 n.2 (E.D. Wash. Mar. 2, 2017) (citing *Martin v. United States*, 834 F. Supp. 2d 115, 136 (E.D.N.Y. 2011)). Hence, I will also consider whether Reed is entitled to relief under section 3582(c)(2). That statute provides:

> The court may not modify a term of imprisonment once it has been imposed except that . . . in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o), . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2). "The relevant policy statement" for purposes of section 3582(c)(2) "is U.S.S.G. § 1B1.10," which "lists the amendments that the Commissioner has made retroactive." *United States v. Rivera*, 662 F.3d 166, 170–71 (2d Cir. 2011). That "binding policy statement . . .

14

places considerable limits on district court discretion," and "[a] court's power under [section] 3582(c)(2) . . . depends in the first instance on the Commission's decision not just to amend the Guidelines but to make the amendment retroactive." *Freeman v. United States*, 564 U.S. 522, 531 (2011) (plurality opinion); *Dillon v. United States*, 560 U.S. 817, 826 (2010).

Amendment 794 is not among those listed in section 1B1.10 of the Sentencing Guidelines. *See* U.S.S.G. § 1B1.10. "Because Amendment 794 is not listed among the retroactive amendments in U.S.S.G. § 1B1.10(d), Amendment 794 does not authorize a reduction in [petitioner]'s term of imprisonment under § 3582(c)(2)." *United States v. Barker*, 2017 WL 417141, at *2 (M.D. Fl. Jan. 28, 2017); *accord Calderon v. United States*, 2016 WL 7742746, at *1 (S.D.N.Y. Dec. 28, 2016) ("Amendment 794 is not listed in [section] 1B1.10 and therefore does not apply retroactively."); *United States v. Morales-Perez*, 2016 WL 6426394, at *2 (S.D.N.Y. Oct. 27, 2016) ("The Guidelines Manual lists the amendments that the Sentencing Commission has decided shall be applied retroactively, and Amendment 794 is not listed."). Thus, I "lack[] jurisdiction to amend [Reed]'s term of imprisonment based on Amendment 794." *See Kemp v. United States*, 2017 WL 455403, at *1 (E.D.N.C. Feb. 2, 2017); *accord United States v. Timm*, 2017 WL 364603, at *4 n.3 (D. Kan. Jan. 25, 2017) ("Because the United States Sentencing Commission has not specifically designated Amendment 794 for retroactive application, the Court has no authority to apply the amendment to defendant's case under Section 3582(c)(2)."). Construed as a motion to resentence, Reed's motion still must be dismissed.

**IV.    Conclusion**

Under either section 2255 or section 3582(c), Amendment 794 does not apply retroactively on collateral review. Although the need to deny Reed's petition in order to

safeguard the value of finality may be less apparent here than in other cases,[4] "the guidance of the Supreme Court and Congress is clear and . . . ties [my] hands." *See Foote*, 784 F.3d at 944. Therefore, I deny Reed's motion to vacate his sentence for lack of subject matter jurisdiction.

The Clerk shall enter judgment and close the case.

So ordered.

Dated at Bridgeport, Connecticut, this 20th day of November 2017.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

---

[4] The Supreme Court has identified the "reasons for narrowly limiting the grounds for collateral attack on final judgments" as follows: (1) "Inroads on the concept of finality tend to undermine confidence in the integrity of our procedures"; (2) "[I]ncreased volume of judicial work associated with the processing of collateral attacks inevitably impairs and delays the orderly administration of justice"; and (3) "Because there is no limit on the time when a collateral attack may be made, evidentiary hearings are often inconclusive and retrials may be impossible if the attack is successful." *United States v. Addonizio*, 442 U.S. 178, 184 & n.11 (1979). Here, Reed's petition was timely filed pursuant to the strict limitations of section 2255. The petition also presents a pure issue of law, which can be resolved on the papers without an evidentiary hearing. And because Amendment 794 went into effect immediately after the Second Circuit upheld Reed's sentence—and applies retroactively on direct appeal—Reed may have been entitled to reconsideration of the Second Circuit's decision, had he moved for it.

I consider it unfortunate that Reed lost what may have been a viable claim under Amendment 794 because he petitioned for a writ of habeas corpus rather than moving for appellate reconsideration. Nevertheless, I do not think that Reed's attorney's decision not to move for reconsideration—perhaps because the language of the Second Circuit's summary order indicated that he would be unsuccessful—"fell below an objective standard of reasonableness," as required to justify a claim of ineffective assistance of counsel. *See Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)); *cf. Cook v. United States*, 2006 WL 3333068, at *11 (S.D.N.Y. Nov. 15, 2016) (deeming counsel ineffective when "[n]ot only did Cook's appellate counsel fail to raise Amendment 503, but he [also] failed to reassert sentencing counsel's argument that Cook could not be held responsible for quantities of heroin before he joined the conspiracy"). Despite my sympathy for Reed's situation, his case is not the rare one "in which 'a fundamental miscarriage of justice would result from a failure to entertain the claim.'" *See Underwood v. United States*, 166 F.3d 84, 88 (2d Cir. 1999) (quoting *McCleskey v. Zant*, 499 U.S. 467, 495 (1991)).